

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

BILLYJO MCALLISTER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

___

**DECISION AND ORDER**

1:17-CV-00636 EAW

## **INTRODUCTION**

Plaintiff Billyjo McAllister ("Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. (Dkt. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 10; Dkt. 13). For the following reasons, Plaintiff's motion (Dkt. 10) is granted in part, the Commissioner's motion (Dkt. 13) is denied, and this matter is remanded to the Commissioner for further administrative proceedings.

- 1 -

## BACKGROUND

On September 17, 2013, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). (Dkt. 7 at 60-65).[1] He alleged disability beginning February 8, 2013, due to chronic obstructive pulmonary disease ("COPD"), heart problems, scoliosis, compressed discs in his back, a recent heart attack, and high cholesterol. (*Id.* at 162, 166). On September 17, 2015, Plaintiff and a vocational expert ("VE") appeared and testified before Administrative Law Judge Michael W. Devlin ("the ALJ"). (*Id.* at 26-49). Plaintiff subsequently filed an application for SSI on November 13, 2015. (*Id.* at 153-61). On February 1, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. (*Id.* at 14-21). On May 11, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* at 5-7). Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. (Dkt. 1).

## DISCUSSION

I. **Legal Standard**

A. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

"conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### B. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since the alleged onset date. (Dkt. 7 at 16). At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar disc herniation, pituitary abnormality, Rathkes pouch cyst, blurred vision, and occipital neuralgia. (*Id.*). The ALJ

- 4 -

also found that Plaintiff has the non-severe medically determinable impairment of irritable bowel syndrome. (*Id.*). At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listed impairment. (*Id.* at 17).

Next, the ALJ determined that Plaintiff retains the RFC for perform sedentary work[2] with additional limitations. (*Id.*). Specifically, the ALJ found that Plaintiff can:

> occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk about four hours in an eight hour workday; be allowed to sit for one to two minutes after standing for approximately 30 minutes and be allowed to stand for one to two minutes after sitting for approximately 30 minutes; occasionally push and/or pull 10 pounds; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; frequently perform tasks requiring far visual acuity (*i.e.* greater than 20 feet) and near visual acuity (*i.e.* less than 20 inches); and avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.

(*Id.*). At step four, the ALJ relied on the VE's testimony and found that Plaintiff's RFC prevents him from performing his past relevant work. (*Id.* at 19-20). At step five, the ALJ relied on the VE's testimony and found that Plaintiff can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. (*Id.* at 20-21). Specifically, the VE testified that Plaintiff could work as an "Election Clerk" and a "Surveillance system monitor." (*Id.*). Accordingly, the ALJ concluded that Plaintiff was not "disabled" under the Act. (*Id.* at 21).

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

## II. Analysis

Plaintiff argues that remand is required for three reasons: (1) the ALJ failed to fully and fairly develop the record and consequently did not rely on a medical opinion when formulating Plaintiff's RFC; (2) the ALJ selectively applied evidence from the record and mischaracterized Plaintiff's back issue when determining the credibility of Plaintiff's complaints; and (3) the ALJ erred at step five because the alternative jobs provided by the VE are not viable nor compatible with Plaintiff's RFC. (Dkt. 10-1 at 1, 11-18).

### A. The ALJ Failed to Fully Develop the Record and Erred in Formulating Plaintiff's RFC Without any Medical Opinion on Plaintiff's Limitations.

"The ALJ has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." *Shaw v. Carter*, 221 F.3d 126, 131 (2d Cir. 2000). "Indeed, consistent with this principle, courts have held that, in the absence of any RFC assessments from treating or examining physicians, an ALJ has an affirmative duty to develop the record by obtaining such assessments." *Staggers v. Colvin*, No. 3:14-CV-717 (JCH), 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015). "That said, the Second Circuit has clarified that 'remand is not always required when an ALJ fails in his duty to request opinions,' particularly where 'the record contains sufficient evidence from which an ALJ can assess [the claimant's] residual functional capacity.'" *Rivera v. Comm'r of Soc. Sec.*, No. 14 Civ. 6567(KPF), 2015 WL 6619367, at *11 (S.D.N.Y. Oct. 30, 2015) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013)); *see also Rosa*, 168 F.3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a

'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996))).

"If an ALJ had 'already . . . obtained and considered reports' from treating physicians, the ALJ may have 'before him a complete medical history, and the evidence received from the treating physicians [may be] adequate for him to make a determination as to disability.'" *Luciano v. Comm'r of Soc. Sec.*, No. 16 Civ. 5963 (GWG), 2017 WL 4326078, at *6 (S.D.N.Y. Sept. 28, 2017) (alteration in original) (quoting *Perez*, 77 F.3d at 48). Additionally, "where the medical evidence shows relatively minor physical impairments . . . the ALJ 'permissibly can render a common sense judgment about functional capacity even without a physician's assessment.'" *Huyck v. Colvin*, No. 16-CV-6331P, 2017 WL 2957867, at *10 (W.D.N.Y. July 11, 2017) (quoting *Lewis v. Colvin*, No. 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014)).

Nonetheless, "courts have upheld an ALJ's RFC finding only where the record is clear and, typically, where there is *some* useful assessment of the claimant's limitations from a medical source." *Staggers*, 2015 WL 4751123 at *3 (emphasis in original). "[A]lthough the RFC determination is an issue reserved for the Commissioner, [w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities,' the Commissioner generally 'may not make the connection himself." *Alianell v. Colvin*, No.14-CV-6655P, 2016 WL 981864, at *12 (W.D.N.Y. Mar. 15, 2016) (second and third alterations in original); *see also Hernandez v. Comm'r of Soc. Sec.*, No. 1:13-CV-959 (GLS/ESH), 2015

WL 275819, at *2 (N.D.N.Y. Jan. 22, 2015) (holding the ALJ's determination of the claimant's RFC was not supported by substantial evidence where the record lacked any medical source opinion on the claimant's functional limitations because "[w]ithout the advice of such a medical source, the ALJ, as a layperson, cannot bridge the gap between [the claimant's] impairments and the functional limitations that flow from those impairments.").

Here, the record does not contain any medical opinion providing insight into Plaintiff's functional limitations stemming from his severe impairments. Instead, the ALJ relied primarily on treatment notes when formulating Plaintiff's RFC. (*See* Dkt. 7 at 17-19). However, the treatment notes offer little insight into what limitations Plaintiff may have as a result of his impairments and, for the most part, the ALJ's opinion regarding the Plaintiff's RFC merely reiterates certain treatment notes.[3] (*Id.*). While the Court does note that this is a close case, "where, as here, the record is not voluminous and there is little information as to what treating sources thought about the claimant's limitations," the

---

[3] Treatment notes by Nurse Practitioner Evelyn Ouellette dated October 22, 2014, state, "For the time being I do not recommend that [Plaintiff] lift anything over 10 pounds." (Dkt. 7 at 309). However, the ALJ does not cite that specific insight in his opinion, and it is therefore unclear whether the ALJ relied on it in formulating Plaintiff's RFC. (*See id.* at 17-19). Aside from that particular note, "[a]lthough [Plaintiff's treatment notes] discuss symptoms, diagnoses and treatment plans, [Plaintiff's] treatment records do not explain or assess the scope of [his] work-related capabilities. No treating medical source opined on [Plaintiff's] ability to perform the tasks associated with [sedentary] work. . . . [The ALJ] did not have even an informal assessment of [Plaintiff's] limitations on which to rely in making his determination." *La Torre v. Colvin*, No. 14 Civ. 3615(AJP), 2015 WL 321881, at *12 (S.D.N.Y. Jan. 26, 2015).

proper conclusion is that this action must be remanded to request medical source opinions. *Luciano*, 2017 WL 4326078 at *7 (collecting cases).

The Commissioner relies primarily on two cases to support the contention that the ALJ's determination of Plaintiff's RFC is supported by substantial evidence: *Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. 2016), and *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. 2017). (*See* Dkt. 13-1 at 17). However, these cases are distinguishable from the instant case. In *Johnson*, the ALJ relied in part on a letter from the claimant's treating physician assessing the claimant's functional limitations, specifically noting that the claimant had "severe functional limitations" pre-surgery and had "made clinical improvement" post-surgery. 669 F. App'x at 46. In *Monroe*, the ALJ relied on treatment notes but, unlike here, they "provide[d] contemporaneous medical assessments of . . . characteristics relevant to [the claimant's] ability to perform sustained gainful activity." 676 F. App'x at 8. Therefore, this case must be remanded for the ALJ to request medical opinions from appropriate treating sources.

### B. The ALJ Selectively Applied Evidence from the Record in Assessing Plaintiff's Credibility.

"In cases involving substantial allegations of pain, where an ALJ is required to resolve medical evidence and the claimant's own testimony about his subjective symptomatology, the ALJ 'must make credibility findings when there is conflicting evidence with respect to a material issue such as pain or other disability.'" *Starzynski v. Colvin*, No. 1:15-CV-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) (quoting *Donato v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 721 F.2d 414, 418

(2d Cir. 1983)). "[S]ubjective pain may serve as the basis for establishing disability, even if . . . unaccompanied by positive clinical findings or other 'objective' medical evidence." *Id.* (alteration in original) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). Nonetheless, "[w]hile an ALJ is entitled to resolve conflicts in the evidentiary record, [he] cannot pick and choose evidence that supports a particular conclusion." *Trumpower v. Colvin*, No. 6:13-CV-6661 (MAT), 2015 WL 162991, at *17 (W.D.N.Y. Jan. 13, 2015). In other words, "[i]t is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant." *Starzynski*, 2016 WL 6956404 at *3; *see also Collins v. Colvin*, No. 15-CV-423-FPG, 2016 WL 5529424, at *3 (W.D.N.Y. Sept. 30, 2016) ("An ALJ may not 'cherry pick' from a medical opinion, *i.e.*, he or she may not credit evidence that supports administrative findings while ignoring conflicting evidence from the same source."). "Reliance on cherry-picked evidence does not satisfy a substantial evidence standard." *Tim v. Colvin*, No. 6:12-CV-1761 (GLS/ESH), 2014 WL 838080, at *8 (N.D.N.Y. Mar. 4, 2014) (citing *Fiorello v. Heckler*, 725 F.2d 174, 175-76 (2d Cir. 1983)).

Here, after reviewing the ALJ's opinion and the record, it is clear that the ALJ erred by selectively "cherry-picking" evidence from the record to support his formulation of Plaintiff's RFC and determine Plaintiff's credibility. Specifically, regarding Plaintiff's back impairment, the ALJ noted in his opinion that "diagnostic imaging of [Plaintiff's] lumbar spine dated September 13, 2013, indicates there is lumbar levoscoliosis but no acute findings." (Dkt. 7 at 18). However, the ALJ made no mention of the fact that the same diagnostic imaging indicated that Plaintiff has degenerative disc disease. (*Id.* at 360). The

ALJ cited the treatment notes from September 13, 2013, in stating that Plaintiff's "spinal contour is within normal limits, no mild tenderness or muscle spasm of the spine was noted bilaterally, [Plaintiff's] straight leg raising test was negative bilaterally and strength was noted to be 5/5." (*Id.* at 18-19). However, the ALJ disregarded later treatment notes from November 4, 2013, that indicate that Plaintiff has paraspinal muscle tenderness, facet joint tenderness, sacroliliac joint tenderness, and vertebral spinous process tenderness. (*Id.* at 236). The November 4, 2013, notes also state that Plaintiff was positive for pain on a straight leg raising test and had a small disc herniation. (*Id.* at 236-37). Furthermore, treatment notes from October 4, 2014, indicate that Plaintiff has "[t]enderness over [the] sacrum," although the ALJ did not cite that fact. (*Id.* at 19, 311). Furthermore, treatment notes from July 10, 2015, indicate muscle spasms and bilateral tenderness in Plaintiff's paraspinal area. (*Id.* at 453). The ALJ cited the July 10, 2015, notes only to state that Plaintiff "walks with a slow, wide based gait," but failed to state that this finding showed a change from prior treatment notes indicating that Plaintiff's gait was normal. (*Id.* at 19, 237).

The ALJ cited treatment notes from December 27, 2013, to state that Plaintiff "reported more than 75 percent pain relief after receiving [medial] branch block injections." (*Id.* at 19). However, the ALJ left out the fact that those treatment notes state that Plaintiff only reported "75% pain relief *for about 2-3 days after the procedure.*" (*Id.* at 234) (emphasis added). The ALJ made a similar mischaracterization when citing treatment notes from March 21, 2014, to state that Plaintiff "reported very good pain relief at more than 90 percent to his left side, after a left-sided lumbar medial branch

radiofrequency ablation procedure." (*Id.* at 19). While the March 21, 2014, treatment notes do reflect this, they also state that Plaintiff continued to complain of pain in the right side of his lower back. (*See id.* at 242). Furthermore, the ALJ overlooked that treatment notes dated July 23, 2014, state that Plaintiff reported "worsening lower back pain over the last few weeks." (*Id.* at 246).

Regarding Plaintiff's visual impairment and occipital neuralgia, the ALJ cited treatment notes from October 15, 2013, that indicate that Plaintiff's vision problems had "resolved since he had an ophthalmology evaluation and got stronger prescription eyeglasses." (*Id.* at 19, 219). Nonetheless, the ALJ failed to mention that the treatment notes dated June 30, 2015, from a follow up for Plaintiff's pituitary cyst, state that Plaintiff was positive for blurry and decreased vision. (*See id.* at 253).

Regarding Plaintiff's pituitary cyst, the ALJ cited treatment notes dated June 17, 2014, in concluding that Plaintiff "has no incoordination or involuntary movements," as well as treatment notes dated May 29, 2015, indicating that Plaintiff "reported that his memory has been stable." (*Id.* at 19). However, the ALJ did not mention that the May 29, 2015, notes contradict the June 17, 2014, notes, as they indicate that Plaintiff "has problems with some incoordination that is not new." (*Id.* at 255). Furthermore, July 23, 2015, treatment notes state that while working on his car, Plaintiff suffered from a "loss of balance." (*Id.* at 396). Those treatment notes also state that Plaintiff suffers from dizziness, forgetfulness, headaches, and migraines. (*See id.*).

Given the ALJ's failure to incorporate or reference much of the record evidence, detailed above, the ALJ's credibility determination is unsupported by substantial evidence.

Therefore, remand is also required for the ALJ to properly weigh and assess all the evidence from the record.

C. **The ALJ's Step Five Findings**

"At step 5, the burden is on the Commissioner to prove that 'there is other gainful work in the national economy which the claimant could perform.'" *Karabinas v. Colvin*, 16 F. Supp. 3d 206, 220 (W.D.N.Y. 2014) (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)). "The ALJ properly may rely on an outside expert, but there must be 'substantial record evidence to support the assumption upon which the vocational expert based his opinion.'" *Id.* (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)). "In order to meet his burden . . . generally the ALJ examines a vocational expert by the use of hypothetical questions." *Jehn v. Barnhart*, 408 F. Supp. 2d 127, 135 (E.D.N.Y. 2006). "If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009); *see also Karabinas*, 16 F. Supp. 3d at 220 ("A VE's opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability." (citing *DeLeon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984))).

As discussed above, the Court finds that the instant case must be remanded in order for the ALJ to request proper medical opinions about Plaintiff's RFC and to properly weigh all the evidence in the record. As this "new evidence . . . is relevant to the hypothetical questions posed to the [vocational] expert in the hearing and may alter the expert and the

- 13 -

ALJ's conclusion as to whether [Plaintiff] has the ability to perform other work," the Court need not determine at this time whether the jobs the VE previously testified that Plaintiff could perform are viable and constitute substantial evidence of the ALJ's step five finding. *Jehn*, 408 F. Supp. 2d at 137.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted in part, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: July 31, 2018
　　　　Rochester, New York